[No. 1951.]

### SAM NORWOOD *v.* THE STATE.

1. THEFT — FACT CASE.— See the opinion *in extenso* for a *resumé* of testimony in a theft case *held* insufficient to support a conviction for theft, however cogently it may prove the falsity of the defendant's explanation of his possession of the stolen property.
2. SAME — CHARGE OF THE COURT.— It is the imperative duty of the trial court to give in charge to the jury the law of circumstantial evidence when the State relies solely upon such evidence for a conviction.

APPEAL from the District Court of Guadalupe. Tried below before the Hon. George McCormick.

The conviction was for the theft of a horse, the property of Howe Little, in Guadalupe county, Texas, on the 13th day of August, 1885. The penalty awarded the appellant was a term of five years in the penitentiary.

The opinion sufficiently indicates the purport of the inculpatory evidence. The defendant introduced no evidence.

The motion for new trial raised the questions discussed in the opinion.

*Rust & Erringhaus,* for the appellant.

*J. H. Burts,* Assistant Attorney-General, for the State.

HURT, JUDGE. The appellant stands convicted for the theft of a horse, the property of Howe Little.

When the attention of defendant was called to the fact that he had traded witness Jones the horse in controversy, he stated that he

had gotten the horse from a Mexican; that when he got the horse from the Mexican he (the Mexican) was hauling cotton on Mr. Williams's place to the gin.     Defendant also stated that he got the horse from a negro in the country.     Defendant gave neither the name nor any description of the Mexican.

When Jones, to whom the defendant traded the horse, with others who were desirous of seeing defendant in relation to the stolen horse, rode up to the house of defendant, he, defendant, said that he did not recognize Jones; but, when Jones called his attention to the fact that he had traded him the horse, defendant at once knew him and promptly admitted that he had traded the horse to Jones.     He informed Jones where he could find his horse, which was at old Mr. Williams's place, about four miles from defendant's.

Jones, for the State, says that on the same occasion defendant told him that he had gotten the horse from a Mexican while hauling cotton to the gin at Williams's, and that defendant also made some other statements about getting the horse from some one else than the Mexican.     That at the time when defendant traded the horse to Jones he, defendant, stated that he had raised the horse.     It seems that defendant was known by two names, to wit: Joe Bouldin and Sam Norwood.

From the above facts it appears that defendant was in recent possession of the stolen property; that, when called upon to explain, he gave contradictory accounts of his possession,— first denied that he knew Jones, to whom he had sold the horse, and went under an assumed name, or at least was known by two names.

Now, if the evidence closed here we would not hesitate in holding the case clearly established.     But this is not all of the evidence. The State introduced Andy Williams, who swears that he knew defendant; that he had lived several years on his place; that in November, 1884, a Mexican came to his store with a small bunch of horses; that he did not actually see the trade made, but, in a few moments after hearing a conversation, the defendant and the Mexican came to the store, and defendant asked him to write him a bill of sale for a grey horse.     He told defendant that he did not have time, that he was too busy, but that he would be a witness, and that would do as well as a bill of sale.     That defendant gave the Mexican a bay horse for the grey horse; that the horse that Mr. Little claimed and took as his is the same horse.

Now, while it may be true that defendant lied about the manner by which he obtained possession of the horse, and that he desired to prevent Jones and others from tracing the horse to him, etc., still we

are not to conclude that all liars are thieves, and that therefore the real facts shall not be shown and permitted to control.

By Williams the State establishes an explanation of defendant's possession, which, if true, must evidently exonerate defendant from guilt. But it may be urged that, as the jury are the judges of the credibility of the witnesses, they may have given no credence whatever to the testimony of Williams, and hence the judgment should be sustained.

Now, while it is true that the jury are the judges of the credibility of the witnesses, and have the right to believe or disbelieve a witness, certainly the testimony of a witness should not be discarded wantonly or arbitrarily.

In this case the State introduced Williams, thereby indorsing his credibility, and by whom she proved facts which clearly exonerated appellant from all crime, except lying perhaps. There is no pretense that the State was surprised by the testimony of Williams, nor is his testimony surrounded by suspicious circumstances. This being the case, the guilt should have been determined in the light of Williams's testimony, and, passing upon his guilt in the light of this testimony, we do not think the evidence sufficient.

This being a case of purely circumstantial evidence, the law or rules governing such cases should be given in charge to the jury. This was not done in this case, and hence the judgment must be reversed and the cause remanded.

*Reversed and remanded.*